# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTONIO A.,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>  COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 19 CV 168<br><br>Magistrate Judge McShain |

## MEMORANDUM OPINION AND ORDER

Plaintiff Antonio A. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying his application for benefits. For the following reasons, the Court grants plaintiff's motion for summary judgment [23],[1] reverses the SSA's decision, and remands the case for further administrative proceedings.

## Background

In June 2015, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of September 13, 2013. [15-1] 25. Plaintiff's claim was denied initially and on reconsideration. [*Id.*] 105-107, 113-115. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) on April 20, 2017. [*Id.*] 25. In a decision dated September 28, 2017, the ALJ found

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, with the exception of citations to the administrative record [15-1], which refer to the page numbers in the bottom right corner of each page.

that plaintiff was not disabled. [*Id.*] 25-39. The Appeals Council denied review on November 14, 2018 [*id.*] 1-3, making the ALJ's decision the agency's final decision. Plaintiff timely appealed to this Court [1], and the Court has jurisdiction to review the SSA's decision under 42 U.S.C. § 405(g).[2]

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant can perform his past relevant work; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

---

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. [9].

2

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted).

## Discussion

At Step One, the ALJ found that plaintiff had not performed substantial gainful activity since his alleged onset date of September 13, 2013. [15-1] 27. At Step Two, the ALJ determined that plaintiff had the severe impairments of "osteoarthritis, bilateral knees" and obesity. [*Id.*] 28. At Step Three, the ALJ ruled that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. [*Id.*].

Before turning to Step Four, the ALJ found that plaintiff had the RFC to occasionally lift and/or carry a maximum of twenty pounds; frequently lift and/or carry a maximum of ten pounds; walk and/or stand for about two hours total out of an eight-hour workday; sit for about six hours out of an eight-hour workday; and push and/or pull to include operation of hand/or foot controls with the bilateral upper and lower extremities as restricted by the limitations on lifting and/or carrying. [15-1] 32.

3

The ALJ then added three postural limitations to the RFC: plaintiff could never climb ladders, he could never squat or kneel, and he could bend occasionally. [*Id.*]. Finally, the ALJ added an environmental limitation, barring plaintiff from operating dangerous moving machinery. [*Id.*].

At Step Four, the ALJ ruled that plaintiff was unable to perform his past relevant work. [15-1] 36. At Step Five, the ALJ held that jobs existed in significant numbers in the national economy that plaintiff could perform. [*Id.*] 37-38. The ALJ recognized that plaintiff's limitations–namely "the ability to walk and/or stand for about two hours and to sit for about six hours of an eight-hour workday"–were part of "the definition of 'sedentary exertional work'" used by the SSA. [*Id.*] 37. Because plaintiff was able to lift up to twenty pounds occasionally and frequently use his bilateral upper extremities, however, the ALJ concluded that plaintiff was capable of "perform[ing] work within the range of light work, albeit a limited range." [*Id.*]. Relying on the testimony of a vocational expert, the ALJ found that a hypothetical claimant with plaintiff's age, education, work experience, and RFC could perform work as a packer, assembler, and sorter. [*Id.*] 37-38.

Plaintiff argues that substantial evidence does not support the ALJ's finding that he retained the RFC to either stand and/or walk for about two hours during an eight-hour workday or occasionally lift up to twenty pounds. [24] 5. In support, plaintiff observes that Vishal Mehta, the surgeon who performed plaintiff's most recent knee surgery in 2014, prepared a work status report in 2017 opining that plaintiff (1) was capable of "[s]itting work only" and (2) could lift up to twenty pounds

4

but did not specify how often plaintiff was capable of such lifting. *See* [15-1] 965. Even though the ALJ gave Dr. Mehta's opinions "great weight" based on the length of the treating relationship, *see* [*id.*] 35, plaintiff argues that the ALJ did not explain why her RFC finding deviated from Dr. Mehta's opinion regarding plaintiff's restriction to sitting work only. Nor, plaintiff contends, did the ALJ give a reasoned explanation for concluding that he could occasionally lift up to twenty pounds; rather, in plaintiff's view, the ALJ made an "unsupported assumption" about the frequency with which plaintiff could lift twenty pounds. [24] 5.

The Court concludes that substantial evidence does not support the ALJ's finding that plaintiff was capable of standing and/or walking for about two hours. Although the Court is mindful of its obligation to review the ALJ's decision deferentially, the ALJ's decision here simply "lacks evidentiary support," *Brett D.*, 2021 WL 2660753, at *1, and cannot withstand even deferential review.[3]

"A disability claimant's RFC describes the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). "An ALJ must evaluate all relevant evidence when determining an applicant's RFC[.]" *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Id.* at 592.

---

[3] Because this issue is dispositive, the Court need not address plaintiff's additional arguments for reversing the Commissioner's decision.

5

When the ALJ set forth plaintiff's RFC, she did not connect her finding that plaintiff could perform work requiring him to "walk and/or stand for about two hours" during the workday to a substantial evidentiary basis. Rather, the ALJ offered only the following justification for her conclusion:

> As noted above, the claimant had a history of obesity on the border of level III or extreme obesity. Obesity imposes stress on the lower extremities even in the absence of osteoarthritis or other problem [*sic*]. When the effect of obesity is considered on the claimant's knees since surgery and development of osteoarthritis, limiting him to about two hours of walk/standing was reasonable.

[15-1] 34.

Although the ALJ properly considered the extent to which plaintiff's obesity exacerbated the limitations caused by his bilateral osteoarthritis, *see Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018), the ALJ's statement sheds no light on why she believed that plaintiff was capable of "about two hours of walk/standing" despite his obesity and bilateral osteoarthritis. *Cf. Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another to have a bad knee supporting a body mass index in excess of 40.").

More importantly, the ALJ did not explain how her RFC finding was consistent with Dr. Mehta's opinion that plaintiff was limited to "sitting work only." [15-1] 965. After reciting this part of Dr. Mehta's opinion, the ALJ stated that "[t]his medical source state [*sic*] was given great weight, as Dr. Mehta had met with the claimant about once a month since August 2014[.]" [*Id.*] 35. The ALJ even characterized Dr. Mehta's 2017 work status report, together with a similar report that Mehta had completed in September 2015, as "the most complete description of the claimant's

6

functional limitations[.]" [*Id.*]. To be sure, the ALJ was free to accept or reject the different conclusions expressed by Dr. Mehta, but the ALJ needed to "explain the logical bridge between the evidence and a decision to give different weights to different parts of a medical opinion so as to allow for meaningful review." *Brett D.*, 2021 WL 2660753, at *3. Nowhere did the ALJ explain why she did not accept or credit Dr. Mehta's opinion that plaintiff could perform "sitting work only," nor did the ALJ cite any evidence in the record that would obviously support a finding that plaintiff could stand or walk for up to two hours during a workday.

The remainder of the ALJ's decision likewise fails to marshal substantial evidence respecting plaintiff's ability to stand and/or walk. Indeed, to the extent the ALJ discussed plaintiff's standing and walking abilities at all, those discussions were more consistent with Dr. Mehta's 2017 work status report than the ALJ's own conclusion.

For example, the ALJ recounted plaintiff's testimony that he (1) "could stand for 20 minutes, but needed to lean on something while he did"; (2) "had no problems with sitting, but had knee pain when he stood up"; (3) "leaned on the cart for support" when "he went to the grocery store"; and (4) "could walk for two blocks, but would have a lot of pain." [15-1] 33. Notably, the ALJ made no specific credibility finding respecting plaintiff's reported difficulties with walking and standing. [*Id.*] 33-34. The ALJ did make an adverse credibility finding respecting the severity of plaintiff's knee pain, concluding "the severity of pain [plaintiff] alleged was not supported by the longitudinal record." [*Id.*] 33. But this finding–which does not directly relate to

7

plaintiff's ability to stand and/or walk–is extremely dubious because it rests on a single supposed contradiction in the amount of pain that plaintiff experienced in the fall of 2015. As the ALJ found, plaintiff stated in a September 2015 "knee questionnaire" that standing upright caused extreme pain, but in October 2015 plaintiff told Dr. Mehta that "he had no major issues and was happy with the improvement in [his] left knee." [*Id.*] 33. The ALJ did not explain why these statements were representative of the longitudinal record respecting plaintiff's knee pain, nor did she account for plaintiff's report to Dr. Mehta the following month, in November 2015, that "he has continued right knee pain with any excessive activity." [*Id.*] 910.

The severe and long-standing nature of plaintiff's knee problems also appears consistent with Dr. Mehta's opinion that he was capable of "sitting work only." Plaintiff had undergone three knee surgeries: arthroscopic surgery on his right knee in August 2012, arthroscopic surgery on his left knee in September 2013, and a cartilage replacement in his left knee in December 2014. [15-1] 28-29; [*id.*] 646, 649, 651. Plaintiff also received orthovisc injections in each knee [*id.*] 796, 808, and, had he not lost his insurance, plaintiff would have obtained additional viscosupplementation injections. [*Id.*] 963. At the hearing, moreover, plaintiff testified that he expected to have his right knee replaced; when the ALJ asked him "what is holding you back from having that surgery," plaintiff responded that he lacked money for the surgery and that the surgery was "for someone that is older than I am." [*Id.*] 63.

8

For his part, the Commissioner asserts that the ALJ properly "considered Dr. Mehta's restriction" of plaintiff to sitting work only "when she explained that she gave his opinion great weight." [31] 4. But this assertion fails to explain how the ALJ could give great weight to Dr. Mehta's opinion and, without further explanation or citation to the record, conclude that plaintiff was capable of standing and/or walking for about two hours during the workday.

The Commissioner maintains that the ALJ's RFC determination also rested on Dr. Mehta's 2015 work status report, where Mehta opined that plaintiff was limited to "sitting work mostly." [*Id.*] 4; [15-1] 987. "To the extent there was any conflict in Dr. Mehta's opinions," the Commissioner argues, "the ALJ reasonably resolved any conflict and found plaintiff could stand and/or walk for about two hours out of an eight-hour day." [31] 4. But there is no conflict between these reports. Rather, Dr. Mehta's opinion that plaintiff was not limited to sitting work only in 2015, but was so limited in 2017, suggests that plaintiff's limitations had become more severe after the 2015 report.

Finally, the Court concludes that the ALJ's error in determining plaintiff's RFC was not harmless.

As noted above, the ALJ found that plaintiff had the RFC to perform "sedentary exertional work" and a "limited range" of light work. [15-1]. The former finding was based on the ALJ's determination that plaintiff had "the ability to walk and/or stand for about two hours" during the workday, while the latter was based on

9

her determination that plaintiff had "the ability to life and/or carry up to 20 pounds occasionally[.]" [*Id.*] 37.

"Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). For purposes of this regulation, "occasionally" means "occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday[.]" SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).

If plaintiff could not stand and/or walk for up two hours during an eight-hour workday, he would not be capable of performing a full range of sedentary work. Accordingly, on remand, the ALJ must reassess plaintiff's RFC, including his ability to walk and/or stand, and whether jobs exist in significant numbers in the national economy that plaintiff can perform. The ALJ should also reassess whether plaintiff is in fact capable of occasionally lifting and/or carrying twenty pounds, given that (1) the ALJ did not cite or discuss any evidence tending to show how frequently plaintiff could carry twenty pounds, and (2) the ALJ's reassessment of plaintiff's ability to stand and/or walk may influence how the ALJ views plaintiff's ability to lift and/or carry up to twenty pounds.

## Conclusion

Plaintiff's motion for summary judgment [23] is granted. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: July 14, 2021**